# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS A. ACOSTA, Jr., | : | CIVIL ACTION NO. 3:CV-14-1564 |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| Warden DePARLOS, et al., | : | |
| Defendants | : | |

## MEMORANDUM

## I. Background

Plaintiff, an inmate formerly confined in the Lycoming County Prison, Williamsport, Pennsylvania,[1] filed this civil rights action pursuant to 42 U.S.C. § 1983. On January 7, 2015, Plaintiff filed an amended complaint. (Doc. 24). The named Defendants are the following Lycoming County Prison employees: Warden DeParlos, Deputy Warden Shoemaker, Lt. Entz, Lt. Rogers, C.O. Dewar and C.O. Hammer. Id.

Acosta alleges that on November 7, 2012, he was taken to a disciplinary hearing resulting from a physical altercation with another inmate, Benjamin Villanueva ("Villanueva"). (Doc. 24, Amended Complaint at 2). During the hearing, Plaintiff states that he "informed Defendant Shoemaker, Defendant Entz

---

[1]Plaintiff is currently housed at the State Correctional Institution, Frackville, Pennsylvania.

and another prison official, that if housed around Villanueva, a known member of the 'Bloods' gang, another fight would occur." Id.

On November 8, 2015, Plaintiff states he was "placed on N-block (the disciplinary housing unit) and assigned to a cell with another well known member of the Bloods gang, inmate Juwann Dickerson, ("Dickerson"). (Doc. 24, Amended Complaint at 3). He claims that Inmate Villanueva was assigned to a cell approximately two cells away from Plaintiff with other well known Blood members in the cell between the two. Id.

On November 9, 2012, Plaintiff alleges that "while in their respective cells, Plaintiff, inmate Villanueva and the other Blood members traded verbal assaults through the cell doors." Id. Plaintiff claims that "after listening for a while, at approximately 3:23 p.m., without forewarning, Defendant Dewar electronically opened all of the cell doors on the top tier of the disciplinary unit." Id. Plaintiff looked out of his cell door and noticed that all of the other cell doors had also opened. Id. Acosta states that "not wanting to be cornered and fearing for his life, [he] immediately put on his shoes and exited his cell." Id. He claims that he and Villanueva "began fighting at which point other gang members Hyson Fredericks, Dondre McMillan and Dickerson all began beating Plaintiff." Acosta's "attempts to defend himself ultimately proved futile as he was overcome by the four gang

2

members." Id. He alleges that "the assault on [him] lasted at least four (4) minutes before back-up was summoned" and "it was at least seven to eight (7-8) minutes later that prison officials finally intervened or offered some assistance to Plaintiff by ordering the perpetrators to lay face down over the intercom." Id.

Acosta was subsequently taken to Williamsport Hospital where he was treated for injuries sustained during the assault. (Doc. 24, Amended Complaint at 4).

Plaintiff states that he "requested an official inmate grievance form from the counselor pursuant to institutional policy" and "upon receipt of the official form [he] filed a grievance which was denied." Id.

Plaintiff then "asked the housing unit officer for any necessary forms to file an appeal but was told that there was no appellate process." Id. He states that his "written request to the counselor for an appeal went unanswered." Id.

On August 8, 2014, Plaintiff filed the instant action. (Doc. 1, complaint). On January 7, 2015, Plaintiff filed an amended complaint in which he seeks compensatory and punitive damages, as well as declaratory relief for "the physical assault resulting from the violations of Plaintiff's Fifth, Eighth and Fourteenth Amendment rights caused him unnecessary and wanton infliction of pain which required hospitalization. (Doc. 24, Amended Complaint at 6)

3

By Memorandum and Order dated October 7, 2015, Plaintiff's complaint survived a motion to dismiss and the action was allowed to proceed to discovery and dispositive motions. (Doc. 37).

Presently before the Court is Defendants' motion for summary judgment. (Doc. 49). Defendants seek entitlement to judgment, <u>inter alia</u>, for Plaintiff's failure to establish Defendants' personal involvement in Plaintiff's ability to exhaust available administrative remedies prior to bringing the instant action. (Doc. 49). Because the record evidence demonstrates Defendants' lack of involvement in Plaintiff's failure to exhaust administrative remedies, and is case dispositive, Defendants' other argument will not be addressed. For the reasons set forth below, the Defendants' motion for summary judgment will be granted.

## II. **Summary Judgment**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

4

requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories

or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

III. **Statement of Facts**[2]

The statement of undisputed facts is limited to Plaintiff's exhaustion of

---

[2]Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendants, all material facts set forth in Defendants' statement (Doc. 50) will be deemed admitted.

administrative remedies and Defendants' involvement therein.

On September 25, 2012, Plaintiff attended the Lycoming County Prison Orientation and was presented with information regarding the following prison procedures:

> Prison Rules of Conduct
> Consequences for Violation of the Rules of Conduct
> Incentives for Good Behavior
> Mail, Visiting and Telephone Procedures
> Access to Medical Care
> Fees, Charges and Co-Payments
> Prison Grievance Process
> Available Treatment Programs
> Available Work Programs

(Doc. 50-1 at 30, Lycoming County Prison Orientation). Plaintiff signed the form attesting to having received this information as well as having received a copy of the Prison Handbook. Id. The Prison's grievance policy is explained in the Inmate Handbook. The grievance policy contains a three-step process for the resolution of grievances: (1) the initial grievance; (2) an appeal to the Warden; and (3) a final appeal to the Prison Board. (Doc. 50-1 at 25, Inmate Handbook).

On November 9, 2012, an altercation occurred within in the prison in which Plaintiff claims to have been attacked by inmate Villanueva. (Doc. 24, Amended Complaint).

On February 11, 2013, Plaintiff was released from the Lycoming County

7

Prison. (Doc. 50-1 at 21, Inmate Housing History).

At no time from November 9, 2012, the date of the fight, through his release on February 11, 2013, did Plaintiff file a grievance relative to the fight. (Doc. 50-1 at 38, Defendants' Request for Admissions).

On October 11, 2013, Plaintiff was again housed in the Lycoming Count Prison. (Doc. 50-1 at 32, Inmate Housing History).

On March 6, 2014, Plaintiff filed an initial grievance to the Deputy Warden, stating that on November 9, 2012, he was assaulted by inmate Villanueva. (Doc. 50-1 at 34, Inmate Grievance Form).

On April1, 2014, Deputy Warden Shoemaker responded with the following:

> Your grievance is denied. You are not currently housed with inmate Villanueva and a separation has been placed between you and inmate Villanueva. Secondly, a separation was also placed between you and the other three inmates involved in this incident, however, they are no longer incarcerated in the Lycoming County Prison.

Id. Under the grievance policy, Plaintiff had ten days to appeal Deputy Warden Shoemaker's initial denial to the Warden. (Doc. 50-1 at 25, Inmate Handbook).

On April 10, 2014, Plaintiff submitted a request to Counselor Rhonda Ulrich for two grievance appeal forms. (Doc. 57 at 3, Inmate Request Slip).

On April 16, 2014, Plaintiff was released from the Lycoming County Prison. (Doc. 50-1 at 32, Inmate Housing History).

At no time from October 11, 2013 through Acosta's release on April 16, 2014, did Warden DeParlos personally receive from Acosta a grievance or an appeal of any grievance relative to the altercation at issue in the complaint. (Doc. 50-1 at 72, Declaration of Warden Kevin DeParlos at ¶ 17). Because Acosta never filed an appeal with Warden DeParlos' office, the Warden was never provided the opportunity to address the allegations made within the grievance. Id. at ¶ 25.

Warden DeParlos, Deputy Warden Shoemaker, Lieutenant Entz, Corrections Officer Dewar, Lieutenant Rogers, and Deputy Warden Ebner did not impede or prevent Plaintiff from filing a grievance or from appealing his denied grievance, nor do any of those individuals know of any other person who impeded or prevented Plaintiff from filing a grievance or from appealing a grievance. (See Doc. 50-1, Declarations of Defendants).

## IV. Discussion

### A. Exhaustion

The Prison Litigation Reform Act requires that inmates exhaust the administrative remedies that are available to them prior to bringing suit in federal court. 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983) or any other federal law,

9

by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available have been exhausted." Id.

Importantly for purposes of this case, "[t]he PLRA does not require exhaustion of all remedies. Rather, it requires exhaustion of such administrative remedies 'as are available'." Brown v. Croak, 312 F.3d 109, 111 (3d Cir.2002) (citing 42 U.S.C. § 1997e(a) and Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000)). The exhaustion requirement of the PLRA is absolute, except in those circumstances where no administrative remedy is available for an inmate to use. See Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir.2004); Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir.2000). " 'Available' remedies are those 'capable of use' or those 'at hand'." Ricketts v. AW of Unicor, 2008 WL 1990897, *5 (M.D. Pa. 2008) (citing Brown, 312 F.3d at 113). The Third Circuit Court of Appeals has clearly instructed that "[t]he availability of administrative remedies to a prisoner is a question of law." Brown, 312 F.3d at 111 (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir.2002)). Although in "appropriate cases" an inmate's failure to exhaust available administrative remedies may be raised as a basis to dismiss a complaint on the pleadings, Brown, 312 F.3d at 111, failure to exhaust is an affirmative defense that must be proven by the defendant. See Ray, 285 F.3d at 295. Moreover, "[i]f there is a question as to availability of administrative remedies,

summary judgment or dismissal is inappropriate." Mendez v. Sullivan, No. 3:11–CV–287, 2012 WL 760724, *4 (M.D. Pa. Mar. 7, 2012). See also, e.g., Brown, 312 F.3d 109 (3d Cir.2012) (dismissal inappropriate where availability of administrative remedies was disputed because prison officials told inmate to wait to file a grievance until after completion of an investigation); Mitchell v. Horn, 318 F.3d 523 (3d Cir.2003) (district court erred by dismissing an inmate's complaint when he claimed that administrative remedies were unavailable because prison officials denied him necessary grievance forms); Kantamanto v. King, 651 F.Supp.2d 313 (E.D. Pa.2009) (summary judgment inappropriate because disputed issues of material fact existed as to whether an inmate was denied access to proper forms, whether inmate knew he could appeal grievance through a letter to the Commissioner, and whether the letter was sent).

Defendants assert that Plaintiff has failed to exhaust the administrative remedies available at the Lycoming County Prison. And while the record evidence supports this contention, it also shows that Plaintiff attempted to exhaust by requesting a grievance appeal form, but was denied the appeal form by Counselor Ulrich, who is not a named Defendant in this action. To that end, while Plaintiff may have been prevented from exhausting, it was not at the hand of any named Defendant.

To successfully state a § 1983 claim, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived the plaintiff of rights, privileges, or immunities secured by the laws or the Constitution of the United States. Rehberg v. Paulk, 566 U.S. 356, 360 (2012); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014).

To establish liability for the deprivation of a constitutional right, an individual government defendant must have personal involvement in the alleged wrongs; liability cannot be predicated based on the unconstitutional conduct of their subordinates under a theory of respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2016); Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). "It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." Argueta v. U.S. I.C.E., 643 F.3d 60, 71-72 (3d Cir. 2011). "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). This personal involvement must be "shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d

12

Cir.1988); see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"). A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 201–202 (3d Cir. 2000).

Here the documentary evidence reveals that none of the named Defendants ever impeded or prevented Plaintiff from filing a grievance or an appeal from the denial of a grievance. As such, Defendants are entitled to summary judgement as a matter of law for Plaintiff's failure to establish their personal involvement in the denial of a constitutional right.

### III. Conclusion

Defendants motion for summary judgment is granted. An appropriate order will follow.

Dated: September 29, 2017                    /s/ William J. Nealon
                                             **United States District Judge**

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS A. ACOSTA, Jr., | : | CIVIL ACTION NO. 3:CV-14-1564 |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| Warden DePARLOS, et al., | : | |
| Defendants | : | |

**ORDER**

**AND NOW, THIS 29th DAY OF SEPTEMBER, 2017**, for the reasons set forth in the Memorandum of this date, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment (Doc. 49) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

2. The Clerk of Court is directed to **CLOSE** this case.

3. Any appeal from this Order will be deemed frivolous, without probable cause and not taken in good faith.

/s/ William J. Nealon
**United States District Judge**